IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA

| | | |
|---|---|---|
| Republic Western Insurance Company | ) | |
| | ) | |
| Plaintiff, | ) | CASE NO.: 9:04-0449-23 |
| | ) | |
| v. | ) | **ORDER** |
| | ) | |
| Lathaddeus Williams, Elizabeth Nichols, | ) | |
| Harold Nichols, Carolina Casualty Insurance | ) | |
| Company, and P.B. Express, Inc., | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

This matter is before the court upon motions for summary judgment filed by Plaintiff Republic Western Insurance Company, Defendants Carolina Casualty Insurance Company ("CCIC") and P.B. Express ("PBX"),[1] and Elizabeth and Harold Nichols ("the Nichols"). For the reasons set forth herein, the court (1) grants Plaintiff's motion, (2) denies CCIC's and PBX's motion, and (3) grants in part and denies in part the Nichols's motion.

## I. BACKGROUND

**A. Nature of the Case**

The motions arise from a declaratory judgment action seeking to determine the respective rights and obligations between two insurance companies: Plaintiff and CCIC.[2] The case stems from a vehicle collision involving a personal automobile and a cab-over tractor riding "bobtail"

---

[1] CCIC and PBX have filed their motion and responses jointly.

[2] Plaintiff and CCIC are incorporated in Arizona and Florida, respectively. PBX is a trucking company and motor carrier incorporated in Ohio and with its home office and principal place of business in Rocky River, Ohio. The Nichols reside in Ulmer, South Carolina.

1

– trucking parlance for driving the tractor without an attached trailer or chassis. After the accident, Williams and Nichols filed suits against each other in state court and Plaintiff filed this declaratory judgment action in federal court.

**B. Facts and Proceedings**

Defendant Lathaddeus Williams ("Williams") owned a 1991 Freightliner cab-over tractor but leased it to PBX pursuant to an exclusive agreement. The lease defined PBX as the "carrier," the tractor as "equipment" and stated the following:

> Carrier shall have **Exclusive** possession, control and use of the equipment and shall assume complete responsibility for the operation of the equipment while in actual use for Carrier.

(Pl. Mot. Ex. 3) (alteration in original).

At the inception of the lease, PBX employed Williams to work as a local driver, requiring him to haul containers for the trucking company back and forth from three Charleston-area shipyards: Columbus Street, Wando, and North Charleston. In addition, CCIC issued a policy to PBX for the company's trucking operations[3] and Plaintiff provided coverage to Williams for

---

[3] CCIC's policy provides:

> We will pay all sums an "insured" legally must pay as damages because of "bodily injury" or "property damage" to which this insurance applies, caused by an "accident" and resulting from the ownership, maintenance or use of a covered "auto."

The CCIC policy defines "insureds" as:

> a. You for any covered "auto"
> b. Anyone else while using with your permission a covered "auto" you own, hire or borrow . . . .

(Pl. Mot. Ex. 15 at 2.)

2

his "non-trucking" operations, which included his personal use of the tractor.[4]  On April 30, 2003 as Williams was driving from his home in Summerville, South Carolina to the PBX terminal in Charleston, he collided with Mrs. Nichols, causing injuries to both parties.  At the time, the tractor displayed PBX placards and the company's identification numbers.

After the accident, Williams filed suit against Mrs. Nichols for negligence on August 21, 2003, which led Mrs. Nichols to file a counterclaim for negligence.  On February 12, 2004, Plaintiff filed its declaratory judgment action, alleging that CCIC owes coverage and a defense to Williams in the underlying tort action and Plaintiff does not owe coverage or a defense to either Williams or PBX.  Plaintiff, CCIC and PBX, and the Nichols have filed three separate motions for summary judgment, to which timely responses and replies have been filed.

## II.  STANDARD OF REVIEW

To grant a motion for summary judgment, the court must find that "there is no genuine issue as to any material fact." Fed. R. Civ. P. 56(c).  The judge is not to weigh the evidence but rather must determine if there is a genuine issue for trial.  *Anderson v. Liberty Lobby, Inc.*, 477

---

[4] Plaintiff's policy contains an endorsement which states:

1. The following exclusions are added:
    a. A covered "auto" while used *in the business of* anyone to whom the "auto" is rented.

(CCIC/PBX Mot. at 4.) (emphasis added).  The covered "auto" was Williams's tractor.  The policy also contains a Certificate of Insurance that excludes coverage for the following:

   Policy Conditions.  No Liability Coverage is afforded when described
   1. Under carrier direction, control or dispatch;
   2. Used to carry property in any business or *in route for such purpose*.

(Pl. Mot. Ex. 16, 17.) (emphasis added).  The Certificate of Insurance adds Williams as a named insured and expressly states that it is "part of the insurance agreement." *Id.*

3

U.S. 242, 249 (1986). All evidence should be viewed in the light most favorable to the nonmoving party. *Perini Corp. v. Perini Constr., Inc.*, 915 F.2d 121, 123-24 (4th Cir. 1990). "[W]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, disposition by summary judgment is appropriate." *Teamsters Joint Council No. 83 v. Centra, Inc.*, 947 F.2d 115, 119 (4th Cir. 1991). "[T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The "obligation of the nonmoving party is 'particularly strong when the nonmoving party bears the burden of proof.'" *Hughes v. Bedsole*, 48 F.3d 1376, 1381 (4th Cir. 1995) (quoting *Pachaly v. City of Lynchburg*, 897 F.2d 723, 725 (4th Cir. 1990)). Summary judgment is not "a disfavored procedural shortcut," but an important mechanism for weeding out "claims and defenses [that] have no factual bases." *Celotex*, 477 U.S. at 327.

### III. DISCUSSION

**A. Plaintiff's Motion for Summary Judgment**

Plaintiff argues that it is entitled to summary judgment, as (1) its policy excludes coverage for Williams because he was operating the truck "in the business of" PBX at the time of the accident, (2) CCIC owes coverage and a defense to Williams, and (3) PBX is not an insured under its policy and has no standing to assert claims for coverage, defense, or bad faith against it. CCIC, PBX, and the Nichols have filed responses. CCIC and PBX argue that (1) Williams was not operating "in the business of" PBX, therefore Plaintiff's policy applies to

Williams, (2) CCIC's policy does not provide coverage or a defense to Williams, and (3) PBX is an insured under Plaintiff's policy. Finally, the Nichols contend that Plaintiff owes coverage and a defense to Williams. Upon reviewing the motion, the court finds in Plaintiff's favor.

### *1. Plaintiff's policy does not provide coverage and a defense for Williams*

South Carolina law controls Plaintiff's policy to Williams, as he is a resident of the state. *Gordon v. Colonial Ins. Co.*, 536 S.E.2d 376, (S.C. Ct. App. 2000) (quoting S.C. Code Ann. § 38-61-10, which provides "[a]ll contracts of insurance on property, lives, or interests in this State are considered to be made in the State . . . and are subject to the laws of this State."). Insurance policies are subject to general rules of contract construction. *Sloan Construction Company, Inc. v. Central National Insurance Company of Omaha*, 236 S.E.2d 818, 819 (1977). The court must enforce, not write, contracts of insurance and must give policy language its plain, ordinary and popular meaning. *MGC Mgmt.,Inc. v. Kinghorn Ins. Agency*, 520 S.E.2d 820, 823 (S.C. Ct. App. 1999).

Upon giving the policy language its plain and ordinary meaning, the pertinent language here -- that coverage is excluded when an insured uses the tractor "in the business of an . . . organization to whom the 'auto' is rented" -- clearly refers to when the insured uses the tractor in the scope of his duties and to further the commercial interests of the lessee. South Carolina case law provides support for such an interpretation. *See Central Nat'l Ins. Co. of Omaha v. Liberty Mut. Ins. Co.*, 685 F. Supp. 123, 126 (D.S.C. 1988) (holding that no coverage was owed under a non-trucking policy, as the driver was operating "in the business of" the carrier-lessee at the time of the accident because he was "acting within the scope of his contract with [the carrier] to further the business of [the carrier]."). Moreover, courts across the country have also

defined the phrase in a similar manner. *See Hartford Ins. Co. v. Occidental Fire & Casualty Co.*, 908 F.2d 235, 239 (7th Cir. 1990) ("The phrase 'in the business of an . . . organization to whom the automobile is rented' clearly refers to occasions when the truck is being used to further the commercial interests of the lessee."); *Lime City Mut. Ins. Ass'n v. Mullins*, 615 N.E.2d 305, 307-08 (Ohio Ct. App. 1992) (finding that the phrase's common meaning is defined as the truck being "used to further the commercial interests of the lessee" or the driver "acting in the scope of his duties.") (citations omitted).

Here, the court finds that in driving from his home to the PBX terminal, Williams was acting in the scope of his duties and to further the commercial interests of PBX. CCIC and PBX assert that Williams acted independent of PBX's interests because no one from the company called him at home and gave him a specific assignment before going to work that day. Such an initial dispatch from the company, however, was not the nature of PBX's business. As one PBX dispatcher noted, drivers generally left their homes to drive to the terminal without knowing what there assignments would be – it was the driver's duty to go to the terminal to get his work duties directly from a PBX dispatcher. *See* Vowell Dep. at 23-24 ("Q. As far as the city drivers are concerned, do you have a way of deciding which driver is going to pick up which container . . . ? A. That is done as [the driver] comes in the office . . . That's my decision."); *see also* Williams Dep. at 109 ("When I leave home, I drive to Charleston where P.B. Express has a trailer. I go in the office and report to the dispatcher and find out what to do for that day and start working after that.")

As a result, by driving to the terminal "on [his] way to work to do business" the morning

6

of the accident, Williams was acting within the scope of his duties. *See* Williams Dep. at 109.[5]
Unlike a situation in which a driver leaves from work to go home, Williams's act of driving to work furthered the commercial interests of the company, as certainly the company's business could not have been accomplished but for Williams driving to work. *See Central Nat'l Ins.*, 685 F. Supp. at 126; *cf. Mullin*s, 615 N.E.2d at 309 (finding that a non-trucking liability policy excluded the driver's travel to work, as the driver's action was a sufficient "benefit" to the company and could be labeled as acting "in the business of" the carrier-lessee.)

In addition, as was expected of him as a local driver for PBX, Williams performed pre-trip inspections on the tractor before driving to the terminal because he wanted to ensure the safety of the vehicle. *See* Williams Dep. at 117 ("I [do] pre-trip [inspections] to make sure it is safe to go do my duties at P.B. Express . . . ."). Such an act also furthered the commercial interests of PBX, as the company expected drivers to perform such inspections to ensure that the company adhered to federal safety standards. *See* Crowell Dep. at 29. (PBX official stating that a driver was expected to pre-inspect his truck "to make sure that it . . . [met] the Federal Motor Carrier Safety Regulations.").[6]

Moreover, the purpose of non-trucking coverage is to provide insurance for those times

---

[5] The court notes that Williams also stated he did not officially "start work[]" until he arrived at the terminal to receive his dispatch. (Williams Dep. at 109.) The policy, however, does not state that it excludes coverage when the driver is "at work" – it provides that coverage is excluded when the insured uses the vehicle "in the business of" a lessee, which means that the insured must act within the scope of his duties and to further the commercial interests of the lessee. The court finds that Williams's actions met the definition.

[6] Moreover, the Certificate of Insurance states that it is "part of the insurance agreement" and provides that no liability is afforded when the tractor is "[u]sed to carry property in any business or *in route for such purpose*." Such a phrase supports the finding that Plaintiff's policy does not apply, as Williams was certainly in route to work for PBX and to carry containers in furtherance of the company's business. (*See* Williams Dep. at 109.)

7

in which a driver uses the tractor for personal reasons. *See, e.g., Planet Ins. Co. v. Anglo American Ins. Co., Ltd.*, 711 A.2d 899, 902 (N.J. 1998) (stating that non-trucking use insurance provides coverage for when a driver uses the tractor for personal reasons, such as solely driving in order to pick up his dry cleaning); *Hartford*, 908 F.2d at 238 (holding that coverage under a non-trucking use policy may apply if the driver used the leased tractor as transportation during a "night out on the town."). Instead of driving for some wholly independent purpose, Williams drove the truck that day in order to further the company's commercial interests. In fact, Williams made it clear that he never drove the truck for personal reasons:

> The truck is for business, not for pleasure. I only drive the truck for business. When I'm not doing business or serviced [sic], it is parked. I don't need to ride around in that truck.

(Williams Dep. at 35.) In considering Williams's drive to work, his actions in completing the necessary pre-trip inspections, and the purpose of non-trucking insurance, the court finds that Williams was acting "in the business of" PBX, thus barring him from coverage and a defense under the policy.[7] Accordingly, the court grants Plaintiff's motion as to this issue. *See also Allstate Ins. Co. v. Stuart*, 266 F. Supp. 494, 496 (E.D.S.C. 1965) (finding that a driver involved in an accident while traveling to the carrier's terminal was acting "in the business of" the carrier, even though he was not under dispatch at the time of the occurrence).

### 2. *CCIC owes coverage and a defense to Williams*

---

[7] PBX's actions after the accident provides further evidence that it believed Williams was acting in the business of the company. Upon Williams's termination as an employee eight months after the accident, PBX recorded the collision on his "Accident Detail," a form that was part of his overall termination record. (PBX Dep. at 12.) The PBX's corporate office defined the accident as "DOT recordable." Such a definition is important, as a PBX official stated that accidents are not DOT recordable if the driver is on his own time and in his own vehicle. *See* Floyd Dep. at 16-17 ("Q. So if [a driver is] on his own time in his own vehicle and he has an accident, that's not a DOT recordable accident; is that correct? A. That's correct.").

8

### *a. There is no irrebuttable presumption that the carrier is a "statutory employer" under the lease*.

In determining whether CCIC owes coverage and a defense to Williams, the court must apply Ohio law, as the policy was issued and delivered to PBX, an Ohio resident. South Carolina's choice-of-law rules require the application of the substantive law of the state where the insurance policy is issued and where the named insured resides. *Unisun Ins. Co. v. Hertz Rental Corp.*, 436 S.E.2d 182, 184 (S.C. Ct. App. 1993). Moreover, Ohio law must be applied when reviewing the lease agreement, as it expressly states that it "shall be governed by the laws of the State of Ohio as to interpretation, construction and performance." (Pl. Mot. Ex. 3).

PBX is a named insured under CCIC's policy and in arguing that CCIC's policy applies, Plaintiff contends that pursuant to the lease agreement and the federal regulations[8] that govern it, PBX was a statutory employer of Williams and therefore is strictly liable for his actions. In support, Plaintiff cites an Ohio Supreme Court decision in *Wyckoff Trucking, Inc. v. Marsh Bros. Trucking, Inc.*, 569 N.E.2d 1049 (Ohio 1991) in which the court established a "bright line" test concerning liability for vehicles leased by interstate motor carriers. The court held that in order for liability to attach on an interstate carrier-lessee under Interstate Commerce Commission ("I.C.C.") regulations, it need only be established that (1) a lease of the vehicle was in effect at the time the cause of action arose, and (2) the vehicle displayed the carrier-lessee I.C.C. number.

---

[8] Plaintiff refers to 49 C.F.R. § 376.12(c)(1), which provides the following:

> The lease shall provide that the authorized carrier lessee shall have exclusive possession, control, and use of the equipment for the duration of the lease. The lease shall further provide that the authorized carrier lessee shall assume complete responsibility for the operation of the equipment for the duration of the lease.

*Id.* at 1053. The court also held that I.C.C. regulations create an irrebuttable presumption of an employment relationship between the carrier-lessee and the driver of a vehicle that displays the I.C.C. identification numbers of the carrier-lessee. *Id.* at 1053-1054.

Plaintiff submits that at the time of the accident, Williams' truck was under a lease agreement with PBX and the vehicle displayed PBX placards and company identification numbers, thus satisfying *Wyckoff* and requiring that PBX be strictly liable for Williams's actions. The court, however, is not persuaded by the argument, as a number of Ohio courts have limited *Wyckoff*'s application and have found that its "irrebuttable presumption" rule was intended to protect injured third-party victims in their suits against motor-carriers, not the driver of the leased vehicle or a sophisticated entity like his insurer. *See, e.g.*, *Roseberry v. Balboa Ins. Co.*, 627 N.E.2d 1062, 1064 (Ohio Ct. App. 1993) ("The irrebuttable presumption set forth in *Wyckoff* was intended for the benefit of the public at large, not for the driver of the leased vehicle.") (citations omitted); *Tolliver v. Braden*, 677 N.E.2d 1249, 1251 (Ohio Ct. App. 1996) ("Several [Ohio] courts have [stated] . . . that the intent of the court's holding in *Wyckoff* is to protect the public at large; it only applies between the 'innocent victim' and the interstate carrier whose placard appears on the vehicle."). The presumption was intended to prevent the "public confusion" that can arise from accidents involving leased tractor-trailers and to relieve the burden of the "innocent victim" in identifying the correct party who is financially responsible for the accidents caused by such vehicles. *Roseberry*, 627 N.E.2d at 1064. The courts presuppose that a driver for the leased vehicle or a similar entity is capable of determining the proper relationships among the various parties to a lease and can determine the potential liability among them without similar confusion. *See id.* ("There is no indication that the Interstate

10

Commerce Act was intended to protect a driver or owner of the vehicle, who is in a position to determine the relationships among the various parties to the lease and to determine who is potentially liable.")

Here, Plaintiff is an insurer of the driver and is in a position to properly determine liability among the parties. As a result, it is not an "innocent victim" and not a member of the protected class. *See id.* at 1065. While holding that *Wyckoff* is not applicable here, we must still determine whether Williams was an insured under CCIC's policy. *See Mullins*, 615 N.E.2d at 309 (applying the policy upon determining that *Wyckoff* was not applicable and the carrier was not a statutory employer). After a review of the record, the court finds that Williams was a permissive user and therefore is an insured entitled to coverage.

### b. *Williams is a permissive user under the policy*

The policy defines an insured as:

a. [PBX] for any covered "auto"
b. Anyone else while using with *your permission* a covered "auto" you own, *hire* or borrow . . . .

(Pl. Mot. Ex. 15 at 2.). The Sixth Circuit Court of Appeals and other courts have held the terms "lease" and "hire" to be interchangeable for the purpose of analyzing insurance coverage. *Russom v. Insur. Co. of North America*, 421 F.2d 985, 993 (6th Cir. 1970) (stating that for a vehicle to constitute a hired automobile, there must be a separate contract by which the vehicle is hired or *leased* to the named insured for his exclusive use or control) (emphasis added); *see also Loper v. National Union Fire Ins. Co.*, 2002 U.S. Dist. LEXIS 2367, *1, *7 (E.D. La. 2002) ("A vehicle is 'hired' when: (1) a separate contract for hiring or *leasing* exists between the named insured and the owner of the vehicle, and (2) the vehicle is subject to the exclusive use

and control of the named insured.") (emphasis added). Given that Williams leased his tractor to PBX under an exclusive agreement in which PBX had "exclusive use, control, and possession of the tractor" during the term of the lease, the court finds that the tractor was a hired auto and therefore "covered" under the policy. (Nichols Mot. Ex. B.).

A named insured can make another person an insured by giving him express or implied permission to use the vehicle. *Hammon v. McLaughlin*, 452 N.E.2d 1277, 1279 (Ohio 1983) (requiring that "insurers denominate as additional insureds any other person using any such motor vehicles with the express or implied permission of the [named] insured.") (citation omitted). The court finds that Williams had express permission to use the truck for PBX's business interests pursuant to his employment with the company, and he acted on that permission when he drove to the terminal to work. *See* Floyd Dep. at 18 (PBX official agreeing that Williams was employed as a driver for PBX.) Moreover, the court finds that Williams had implied permission to operate the tractor as well. Implied permission to use a vehicle is shown "by previous use or consent . . . the relationship of the parties, a course of conduct and circumstantial evidence." *Toney v. Henney*, 166 F. Supp. 85, 89-90 (D. Ohio 1958). Moreover, such permission may result from mutual acquiescence and lack of objection by the granting party. *Id.*

Here, Williams's previous use of the tractor and course of conduct with PBX shows that the carrier granted implied permission for Williams to drive the tractor to work. PBX officials admit that Williams always drove the tractor to work to pick up his assignments and the company certainly never objected to the tractor's use in this manner. (Vowell Dep. at 23-24; Floyd Dep. at 112-113.). Moreover, PBX had the power to grant such permission, as it had

12

exclusive control over the equipment pursuant to the lease. Accordingly, Williams was a permissive user and CCIC's policy applies to him.

### *3. PBX is not covered under Plaintiff's Policy.*

As part of its Answer to the declaratory judgment action, PBX alleged that it was an insured under Williams's non-trucking policy with Plaintiff and Plaintiff acted in bad faith by not providing coverage and for its lack of investigation into the case. (PBX Answer ¶ 31; CCIC Opp'n to Pl. Mot. at 25.) Plaintiff, however, asserts that PBX is not an insured and as a result, the carrier does not have standing to assert claims for coverage, defense, or bad faith against it. Despite the fact that a PBX official conceded that the company was not a holder of Plaintiff's policy (Yun Dep. at 30) and did not believe the company was an insured (*Id.*), the court will outline the reasons why it finds for Plaintiff and holds that PBX is not covered.

First, the policy lists Williams and the "OWNER/OPERATORS OF MTG [Morgan, Trevathan, & Gunn, Inc.]" as named insureds, not PBX. (Pl. Mot. Ex. 16.) MTG is an insurance broker that writes master policies for multiple owner-operator drivers and is not affiliated with PBX. (Yun Dep. at 11, ln. 8-10; Pl. Mot. at 14.) Second, the policy states that an "insured" is:

> [a]nyone while using with [the named insured's] permission a covered 'auto' you own, hire, or borrow *except* . . . anyone else from whom you hire or borrow a covered 'auto.'

(Pl. Mot. Ex. 16 at 2.) (emphasis added). This means that while certain permissive users can be insured, PBX is not one of them, as Williams's tractor was permanently leased to PBX, thereby causing Williams to borrow the vehicle from PBX at the time of the accident. Accordingly, PBX was not an insured under the policy. Of course, because PBX was not an insured, Plaintiff cannot be held liable for coverage or bad faith in regard to a non-insured third party. *See, e.g., Kleckley*

13

*v. Northwestern Nat. Cas. Co.*, 498 S.E.2d 669 (S.C. App. 1998) (finding "that the tort of bad faith only covers conduct between the insurance company and its insured, and that a stranger to the insurance contract cannot assert a claim for bad faith against the insurer."). Accordingly, the court grants summary judgment as to the claim.

**B.  CCIC's, PBX's and the Nichols's Motions for Summary Judgment**

In their motion, CCIC primarily argues that Plaintiff's policy applies to Williams and its policy does not provide coverage. Upon finding that Plaintiff's policy does not apply and CCIC's policy does, the court denies CCIC's and PBX's motion.[9]

Finally, the Nichols argue in their motion that both Plaintiff's and CCIC's policies cover the accident, as the tractor was not being used "in the business of" PBX and Williams was a permissive user under CCIC's policy. As mentioned above, upon finding that Plaintiff's policy excludes coverage and CCIC's policy provides it, the court, pursuant to the reasons stated in the discussion of Plaintiff's motion, grants summary judgment as to Nichols's contention that CCIC must provide coverage and a defense to Williams but denies summary judgment as to its

---

[9] In an attempt to argue that Plaintiff's act of going to work should not be covered, CCIC and PBX raise the "going and coming" rule from South Carolina worker's compensation law, which states that an employee's travel to and from work is incidental to his employment, and therefore, any accident that results does not arise out of his course of employment. *See, e.g., Medlin v. Upstate Plaster Serv.*, 495 S.E.2d 447, 449 (S.C.1998) ("As a general rule, an employee going to or coming from the place where his work is to be performed is not engaged in performing any service growing out of and incidental to his employment, and, therefore, an injury sustained by accident at such time does not arise out of and in the course of his employment."). Given the plain language of the policies, the court does not find it necessary to follow this rule. *See also Lime City Mut. Ins. Ass'n v. Mullins*, 615 N.E.2d 305, 309 (Ohio Ct. App. 1992) ("We find it unnecessary to resort to a workers' compensation analogy to determine whether McCullough was using his truck 'in the business of' appellant."). The case hinges on interpreting the policies -- for example determining whether the tractor was used "in the business of" a lessee or whether an insured granted permission to a third party to use the tractor, not determining whether Williams acted "within the scope of his employment." Accordingly, the court rejects the argument.

14

argument concerning Plaintiff's duty to cover.[10]

---

[10] The Nichols also argue that CCIC should indemnify them pursuant to its MCS-90 Endorsement, which is attached to the policy and provides liability coverage to an insured for negligence arising out of the operation of its vehicles. (Nichols Mot. at 17-18.)  The MCS-endorsement does not apply, however, to indemnify the Nichols, as the Fourth Circuit Court of Appeals has stated that the MCS-90 endorsement operates to protect the public when the insurance policy to which it is attached otherwise provides no coverage to the insured.  *Canal Ins. Co. v. Distrib. Servs.*, 320 F.3d 488, 490 (4th Cir. 2003) (stating that operation and effect of the endorsement is a matter of federal law and finding that "the MCS-90 endorsement creates a suretyship by the insurer to protect the public when the insurance policy to which the MCS-90 endorsement is attached otherwise provides no coverage to the insured.").  Here, the endorsement is attached to CCIC's policy and the court has found that it provides coverage concerning the accident.  Because coverage has been found, the public's interest has been protected and CCIC is responsible for providing coverage to its insured pursuant to the policy, not for indemnifying the Nichols as a result of the endorsement.

## IV.  CONCLUSION

It is, therefore,

**ORDERED,** for the foregoing reasons that Plaintiff's Motion for Summary Judgment is **GRANTED**, Defendants CCIC and PBX's Motion for Summary Judgment is **DENIED**, and Defendants Nichols's Motion for Summary Judgment is **GRANTED IN PART** and **DENIED IN PART**.

**AND IT IS SO ORDERED.**

PATRICK MICHAEL DUFFY
United States District Judge

**Charleston, South Carolina**
**August 15, 2005**